**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JIMMY ELAM, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-3587 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Supplemental Security Income

benefits, Plaintiff Jimmy Elam, Jr. has filed a Motion for Summary Judgment [Doc.

# 12] ("Plaintiff's Motion").  Defendant Michael J. Astrue, Commissioner of Social

Security, has filed a Motion for Summary Judgment [Doc. # 14] ("Defendant's

Motion") and a Memorandum in Support [Doc. # 15] ("Defendant's Memorandum").

The motions now are ripe for decision.  Having considered the parties' briefing, the

applicable legal authorities, and all matters of record, the Court concludes that

Plaintiff's Motion should be **denied** and Defendant's Motion should be **granted**.

## I.   BACKGROUND

### A.   Procedural Background

Elam filed an application for Supplemental Security Income ("SSI") benefits with the Social Security Administration ("SSA") on February 1, 2007.  He alleged disability beginning on January 19, 1989, which is his date of birth.  After being denied benefits initially and on reconsideration, Elam timely requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the decision.

On July 11, 2008, ALJ Gerald L. Meyer held a hearing in Houston, Texas.[1] Elam was represented by current counsel and testified at the hearing.  A vocational expert, Norman C. Hooge, also appeared and testified.  In a decision dated November 6, 2008, the ALJ denied Elam's application for benefits.[2]  On November 6, 2009, the Appeals Council issued an order remanding Elam's case to the ALJ for proper application of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).[3]

Upon remand, ALJ Meyer held a second administrative hearing on February 18,

---

[1]    R. 59-75.

[2]    R. 82-87.

[3]    R. 88-91.  The Appeals Council ordered the ALJ to "[f]urther evaluate the claimant's impairments pursuant to the standards set forth by *Stone v. Heckler* to determine severity."  R. 91.

2010.[4]  Elam again was represented by current counsel.  Both Elam and his father,

Jimmy Elam, Sr., testified at the hearing.  Susan Rapart, a vocational expert, also

testified.  No medical expert was called.  In a decision dated March 24, 2010, the ALJ

denied Elam's application for benefits.[5]  On August 8, 2011, the Appeals Council

denied Elam's request for review.[6]  On September 9, 2011, the Appeals Council set

aside its prior opinion in order to consider additional evidence and, after consideration

of the new evidence, again denied Elam's request for review.[7]  The ALJ's denial of

March 24, 2010, thus was rendered final.

Elam filed this case on October 3, 2011, seeking judicial review of the

Commissioner's denial of his claim for benefits.

### B.    Factual Background

Plaintiff Elam claims that his disabling impairments began on his date of birth,

January 19, 1989.  The period most relevant to this decision starts on February 1,

2007, when Elam filed his application for SSI.

From 1995 to 2003, before his eligibility date, Elam was treated multiple times

---

[4]    R. 39-58.

[5]    R. 19-33.

[6]    R. 7-12.

[7]    R. 1-6.

by Dr. Wisiackas at the Cleveland Medical Center.[8]   Among other medical issues, these records contain a notation from 2002 that Elam reported being "weak in [the] knees" and that his parents were concerned "that he can't seem to walk like the 'other kids.'" Elam was referred for physical therapy.[9]   Records from 2003 note Elam's flat affect and his complaints of knee discomfort.[10]   They further state "Double knee per Dr. Katari in Livingston."[11]

From 2002 through 2005, also before his eligibility date, Elam was treated at the Calvary Medical Center in Livingston, Texas.[12]   The records indicate depression, flat affect, poor nutrition, weight loss, and some problems in school, among other issues.  For his depression, he was prescribed medications and offered a psychiatric referral.  Records from 2004 indicate complaints of "leg pain" and a referral to Texas Children's Hospital ("TCH").[13]

On March 22, 2004, Elam was seen by William A. Phillips, M.D., at the

---

[8]     R. 386-453, 465-90.

[9]     R. 394.

[10]     R. 389.

[11]     R. 387.  The record contains no records from "Dr. Katari" although, as stated below, Elam was treated at a clinic in Livingston.

[12]     R. 285-309.

[13]     R. 290.

Orthopaedic Surgery Clinic at TCH.[14] Elam, then fifteen years old, reported knee pain

and difficulty in walking, getting worse over the past three years.  Dr. Phillips noted

that Elam had no history of trauma and was "as active as he wishes to be but he has

pain to the point that sometimes he has difficulty walking long distances, according

to his family."[15]  Upon examination, Phillips noted a "slender boy in no acute distress"

with an "unusual gait with a marked crouched component."[16]  Dr. Phillips concluded,

"I am not sure what is going on with this young man and the knee pain is a fairly

common problem.  He says he has always walked with a crouched gait but I am not

sure why he is doing that."[17]  As a next step, he recommended a "screening MRI of

his entire spinal cord" in the next month to check for "a tethered spinal cord or some

other abnormality."[18]  Elam acknowledges that this MRI was never performed.

On March 26, 2004, Elam received a psychological evaluation by Frankie

---

[14]    R. 453-55.

[15]    R. 455.

[16]    R. 455 ("He has no increased tone in his lower extremities but he has bilateral knee
flexion contractures approximately 15 degrees on the left and 10 degrees on the right.
His deep tendon reflexes are normal.  He has no intrinsic wasting of his hands.  The
spine is straight without dimples, hairy patches or birthmarks.  There is no effusion.
There is no ligamentous laxity.  His patellas are not particularly elevated.  X-rays of
the knees bilaterally show perhaps prominence of anterior tibial tubercle.  X-rays of
the spine show no major abnormalities.").

[17]    *Id*.

[18]    *Id*.

Clark, Ph.D., on a referral from the Texas Rehabilitation Commission.[19]  Elam's father

reported that Elam was "supposed to be on pills for depression" but that he could not

recall the name of the medication.[20]  Elam stated that was attending special education

classes at Livingston Junior High School, that he made As and Bs, and that he did not

have behavioral difficulties.[21]  Clark noted that Elam was cooperative but withdrawn,

avoided eye contact, and had a flat affect.  She observed his memory, attention, and

concentration to be fair; assessed his abstracting ability as below average; and his

insight and judgment as poor.[22]  Using the Wechsler Intelligence Scale for

Children—Third Edition (WISC-III), she assessed his Verbal IQ as 73 (borderline

range), his Performance IQ as 86 (below average range), and his Full Scale IQ as 77

(borderline range).[23]  His academic achievement scores fell in the "deficient" to

"below average" range.[24]  She assessed him with "depressive disorder," "mathematics

---

[19]     R. 279-84.

[20]     R. 281.

[21]     Elam also has submitted educational records from Livingston Junior High School and
         from Onalaska High School, from which he withdrew on October 6, 2004. R. 183-85
         (Onalaska), 186-93 (Livingston), 310-40 (Livingston).

[22]     R. 282.

[23]     R. 283.

[24]     R. 284.

disorder," and "borderline intellectual functioning."[25]

On April 5, 2007, after filing his application for SSI, Elam received a consultative examination from Ryan Holmes, M.D.[26]  Elam reported that he was seeking disability because of "lower back problems" and "bipolar disorder," and that his "major problem [was] chronic lower back pain."  Regarding his back pain, he reported that he had been "[t]old that he has scoliosis," that his back pain radiated to his legs, that he was unable to stand longer than three minutes, that he could sit for four or five hours, and that he could not walk more than 50 feet without resting.  He stated that he currently was taking no medication for his mental condition.  Dr. Holmes observed Elam as being "[a]lert, oriented & not in distress" but with a "[b]izarre affect, staring at floor most of the time."  His observation of the spine states,

> Scoliosis of the spine, [t]enderness present over L4-L5 and L5-L6 spine, [m]ild limits to flexion of the cervical, thoracic and lumbar spine and [s]traight leg raise normal.[27]

His neurological examination states,

> Cranial nerves II through XII intact grossly, muscle strength 5/5 all extremities, deep tendon reflexes are 2+ and symmetric, . . . gait is steady and normal, able to rise from seated position and squat without assistance, appears able to sit, stand, move about, lift, carry, hear and

---

[25]    R. 284.

[26]    R. 341-44.

[27]    R. 343.

speak without difficulty and [a]ble to walk heel-to-toe and tandem walk without difficulty.[28]

Dr. Holmes concluded that his findings were "consistent with scoliosis of the spine" but that "[b]ack problems do not clinical appear [sic] disabling in nature," and recommended a psychiatric evaluation.[29] An x-ray of the lumbar spine ordered by Dr. Holmes was unremarkable.[30]

On April 13, 2007, Elam returned to Frankie Clark, Ph.D., for another psychological evaluation.[31] When Clark asked why Elam was applying for disability, "he reported that he was diagnosed with depression by some therapist in Livingston" whose name he could not recall.[32] He also stated that "he has some medical condition which causes him to become paralyzed" but was "extremely vague" on details.[33] Elam reported that he usually slept during the day and stayed up at night. Clark noted that he was cooperative but maintained poor eye contact and his affect was blunted.[34] She

---

[28]     R. 343.

[29]     R. 343.

[30]     R. 348.

[31]     R. 349-58.

[32]     R. 351.

[33]     R. 351-52.

[34]     R. 353.

stated that she could not assess his memory because "it is believed by the examiner that he did not put forth adequate effort on the testing."[35]  For the same reason, Clark was unable to assess Elam's attention, concentration, abstracting ability, insight, and judgment.  She noted that he was capable of personal hygiene and performing chores around the house.  She administered testing resulting in a Full Scale IQ score of 61, in the mild mental retardation range, but stated that "[Elam's] test scores are considered invalid and therefore not an accurate reflection of his intellectual functioning" because Elam did not put forth adequate effort and  "evidenced the capability of performing certain tasks which later he seemed to purposely get wrong."[36]  She assessed him as malingering.[37]

On April 8, 2008, Elam was seen by Dr. Robert Woodrome and complained of depression and insomnia.[38]  Elam stated that he had a bone disease and a history of depression, and could not stand straight because one leg and arm were longer than the other.  He showed "no affect."  He stated that he had tried to get a job but was not hired because he is "deformed," and was seeking disability.  The record does not

---

[35]     R. 353.

[36]     R. 354.

[37]     R. 356.

[38]     R. 456-58.

indicate any treatment recommended by Dr. Woodrome.

On February 3, 2009, Elam received a diagnostic examination at the Burke Center.[39]  The examiner noted some depression and flattened affect.  He also noted that Elam and his father "report [Elam] has bone disease that will affect life span, and has kept him from getting work.  This medical problem is not fully understood by [Elam]."[40]  He was assessed on a checklist with sad and hopeless mood, but also with normal thought process and speech, good memory, fair insight, good judgment, and normal abstraction.[41]

On January 20, 2010, Elam was assessed at Tri-County HMHR Services.[42]  Elam stated that he had thoughts of suicide "daily" since age five, but had made no suicide attempts and did not intend to kill himself.  He stated that he has "double knees" which cause him pain, and that he was a loner and had no friends.[43]  He was referred to the Burke Center for outpatient care.

## II.   SUMMARY JUDGMENT STANDARD

---

[39]   R. 491-507.

[40]   R. 497.

[41]   R. 504-07.

[42]   R. 459-64.

[43]   R. 461.

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[44]  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[45]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[46]

## III.   <u>STANDARD OF REVIEW</u>

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole, and second, whether the Commissioner applied the proper legal

---

[44]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[45]   FED. R. CIV. P. 56(a).  *See Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[46]   *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

standards to evaluate the evidence.[47]  "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[48]  It is more than a mere scintilla and less than a preponderance.[49]

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present.[50]  In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[51]  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[52]  Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support

---

[47]    *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

[48]    *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[49]    *Id.*; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[50]    *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[51]    *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

[52]    *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

the decision.[53]   The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.[54]   In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.[55]

## IV.   ANALYSIS

### A.   Statutory Basis for Benefits

Elam applied for Supplemental Security Income (SSI) benefits.  SSI benefits are authorized by Title XVI of the Social Security Act, and provide an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line.[56]  Eligibility for SSI is based on proof of disability[57] and indigence.[58]  A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled.[59]   Thus, the month following an application fixes the earliest date from which SSI benefits can be paid.  Eligibility for SSI, unlike eligibility

---

[53]   *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[54]   *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.

[55]   *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

[56]   20 C.F.R. § 416.110.

[57]   42 U.S.C. § 1382c(a)(3) (definition of disability).

[58]   42 U.S.C. §§ 1382(a) (financial requirements).

[59]   *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); 20 C.F.R. § 416.335.

for Social Security disability benefits, is not dependent on insured status.

"Disability" is defined by the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[60]  The law and regulations governing the determination of disability for SSI are the same as those governing determinations for Social Security disability benefits.[61]

## B.    Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.[62]   The

---

[60]     42 U.S.C. § 1382c(3)(A).

[61]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[62]     *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.  The Commissioner's analysis at Steps Four and Five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.*

claimant has the burden to prove disability under the first four steps.[63]  If the claimant successfully carries this burden, the burden shifts to the Commissioner at Step Five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy.[64]  Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding.[65]  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.[66]

In this case, the ALJ determined at Step One that Elam had not engaged in substantial gainful activity since February 1, 2007, his application date.  At Step Two, he found that Elam had two severe impairments: Borderline Intellectual Functioning and Major Depressive Disorder.  He rejected Elam's claim that scoliosis and "bone disease" were additional severe impairments.  At Step Three, he found that Elam's impairments, considered singly or in combination, did not meet or medically equal an impairment listed in the Social Security regulations.

Before proceeding to Step Four, the ALJ found that Elam had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels

---

[63]     *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

[64]     *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.

[65]     *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[66]     *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

but should be limited to a simple, routine work environment."[67]  At Step Four, the ALJ noted that Elam had no past relevant work.  At Step Five, the ALJ determined that, considering Elam's age, education, work experience, and RFC, he was capable of performing jobs that exist in the national economy, including laundry worker, kitchen helper, and hospital cleaner.  He therefore concluded that Elam was not disabled.

### C.   **Plaintiff's Arguments for Reversal**

#### 1.   **Application of *Stone v. Heckler* standard**

Elam first argues that the ALJ erred because he failed to follow the instructions of the Appeals Council's remand order, dated November 6, 2009.[68]  The Appeals Council instructed the ALJ to further evaluate Elam's impairments pursuant to the Fifth Circuit's holding in *Stone v. Heckler*, which holds that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."[69]  This finding of severity or non-severity is relevant to Step Two of the sequential inquiry.  In this case, after remand, the ALJ found at Step Two that Elam's borderline intellectual functioning and major

---

[67]    R. 23.

[68]    R. 88-91.

[69]    *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1995) (internal citation, quotation marks, and alteration omitted).

depressive disorder were severe impairments, but that scoliosis and "bone disease" were not severe.[70]

Elam argues that, although the ALJ cited the correct *Stone* standard at Step Two of his analysis, at other points in his opinion the ALJ cited an incorrect standard that improperly placed a higher burden of proof on Elam.[71]   Elam further argues that, under *Stone*, this legal error requires remand.

In *Stone*, the Fifth Circuit addressed the issue of the Step Two determination of severity, noting with concern that it recently had seen "a number of cases . . . in which the administrative determination was made against disability at step two on the grounds of nonseverity."[72]   The ALJ who decided Stone's case disposed of the case at Step Two, after applying an incorrect standard for severity, and did not proceed to the other steps in the sequential analysis.  The *Stone* Court announced that, in view of its "recent experience with cases where the disposition has been on the basis of nonseverity, we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth," and that remand was the appropriate remedy for failure to set forth the

---

[70]      R. 21-22.

[71]      Plaintiff's Motion, at 7.

[72]      *Stone*, 752 F.2d at 1101.

correct standard.[73]  Subsequently, many cases in the Fifth Circuit have been remanded to the Commissioner for failure to set forth the proper standard.[74]

In this case, however, the ALJ did set forth the proper *Stone* standard when making his Step Two determination.[75]  In particular, the ALJ stated, "based upon evidence of record, scoliosis is a slight abnormality with a minimal effect on the claimant such that it would not be expected to interfere with his ability to work."[76] Elam points to two places in the ALJ's opinion that he claims set forth a conflicting standard.  First, Elam cites to the ALJ's finding of "no evidence" to support Elam's assertion that scoliosis "causes more than a minimal effect on the claimant and interferes with his ability to work."[77]  This language, however, does not indicate that the ALJ actually applied a higher standard than that articulated in *Stone*.  Similarly, Elam points to the ALJ's citation to federal regulations and Social Security rulings stating that an impairment is not severe when it causes "no more than a minimal effect" on ability to work.[78]  Again, this citation by the ALJ does not indicate that the

---

[73]    *Id*. at 1106.

[74]    *See* Plaintiff's Motion, at 8-9 (collecting cases).

[75]    R. 21.

[76]    R. 21.

[77]    R. 24.

[78]    R. 20 (citing 20 C.F.R. § 416.921; Social Security Rulings 885-28, 96-3p, and 96-4p).

ALJ actually applied a higher standard that set forth in *Stone*.  As stated above, in the portion of his opinion in which he makes the Step Two determination, the ALJ cited and applied *Stone*'s precise standard.

Moreover, even assuming that the cited portions of the ALJ's opinion could be construed as applying an improper standard, they do not warrant remand of this case because the ALJ proceeded to Steps Three through Five of the sequential analysis, and considered the effects of Elam's alleged scoliosis and "bone disease" in the later steps. In particular, the ALJ discussed the medical evidence from Dr. Wisiackas, Dr. Holmes, and Dr. Phillips, among others, in reaching his conclusion that Elam's impairments resulted in an RFC of "a full range of work at all exertional levels but . . . limited to a simple, routine work environment."[79]   The Court has carefully considered *Stone*, as well as *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000) and the other authority cited by Plaintiff, and concludes that the weight of the Fifth Circuit authority does not require remand in a case such as this, in which the ALJ proceeded beyond Step Two and considered the effects of the claimant's impairments at the subsequent steps of the analysis.[80]

---

[79]   R. 23-28.

[80]   *See Herrera v. Commissioner of Social Security*, 406 F. App'x 899, 903 (5th Cir. 2010); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1015-18 (continued...)

Summary judgment is granted for Defendant on Plaintiff's Step Two *Stone* issue.

### 2.    Scoliosis and Resulting Limitations

Elam argues that the ALJ erred when he concluded that his scoliosis and the resulting limitations did not affect his RFC or his ability to work.[81]   He cites to the ALJ's holding, which states:

> While [Elam] contends he has physical limitations due to scoliosis, a knee problem and/or because his bone structure is "crooked," none of [Elam's] medical providers has described any functional impairment or any limitation that has been caused by this alleged impairment.   No medical provider has provided a diagnosis or prognosis or treatment of the claimant's alleged physical deformity.   Very few entries in this record support any complaint of knee or back pain made to a medical provider. . . . While the existence of scoliosis appears to be the subject of differing opinions, medical evidence demonstrates no limitation in [Elam's] range of motion or ability to ambulate, manipulate fine objects, or otherwise move about.[82]

The ALJ further noted that the record contained no indication that Elam had sought follow-up treatment or additional testing, as recommended by medical providers, which "creates a question as to whether or not the claimant's alleged bone issues [are]

---

[80]    (...continued)
(N.D. Tex. 2012).

[81]    Plaintiff's Motion, at 11-14.

[82]    R. 28.

a functional problem for him at all."[83]

Elam argues that the ALJ did not properly consider evidence in the record supporting limitations resulting from scoliosis.  As support for his argument, he cites primarily to evidence from 2002 through 2004, which is before the relevant period for this case.  Even considering all of the evidence cited by Elam, he fails to demonstrate that the ALJ's conclusion was not supported by substantial evidence.[84]   Some of the early records indicate that Elam had difficulty walking, including Dr. Phillips in 2004 who noted an "unusual gait with a marked crouch component."[85]   However, Dr. Phillips further noted that he was not sure why Elam was walking that way, and recommended further testing.  Elam acknowledges that this testing was not performed. Elam also cites to Dr. Holmes' examination in 2007, when he stated that his clinical findings were consistent with a diagnosis of scoliosis.[86]   However, in the same examination, Dr. Holmes noted that Elam's gait was "steady and normal, able to rise from seated position and squat without assistance, appears able to sit, stand, move about, lift, carry, hear and speak without difficulty and [a]ble to walk heel-to-toe and

---

[83]    R. 28-29.

[84]    "Substantial evidence" is more than a scintilla but less than a preponderance. *Audler*, 501 F.3d at 447; *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 452.

[85]    R. 455.

[86]    R. 343.

tandem walk without difficulty."[87]  He concluded that Elam's "[b]ack problems do not

clinical appear [sic] disabling in nature."

      The ALJ considered the evidence regarding Elam's limitations from scoliosis,

and his assessment of Elam's RFC is supported by substantial evidence.  Therefore,

his determination is conclusive and must be affirmed.[88] Summary judgment is granted

for Defendant on Elam's second issue.

### 3.      Physical and Mental RFC Findings

      In his third argument, Elam contends that the ALJ's determination of Elam's

physical RFC was not supported by substantial evidence, citing specifically to the

records from Dr. Holmes.  This argument has been addressed above and Plaintiff's

arguments lack merit.

      Elam further argues that the ALJ's determination of Elam's mental RFC was

not supported by substantial evidence, and that "Plaintiff's mental impairments clearly

result in *at least* a 'moderate' limitation in social functioning."[89]

      In his RFC determination, the ALJ stated that Elam "should be limited to a

---

[87]     R. 343.

[88]     *Perez*, 415 F.3d at 461.

[89]     Plaintiff's Motion, at 18 (emphasis original).

simple, routine work environment."[90]  He concluded that "[n]othing in this record . . .

supports the claimant's inability to function based upon a limited intellectual

function."[91]  In reaching this conclusion, he discussed in detail Elam's school records

indicating learning disabilities, both psychological evaluations by Dr. Clark, and

Elam's family's statements regarding his mental condition and his difficulties in

getting a job.[92]  He noted that Elam had an acceptable academic performance in

school, and that "[r]esults of testing do not demonstrate mental regardation except for

the last series of tests [performed by Dr. Clark in 2007] where the claimant was found

by the tester to be malingering."[93]

        The ALJ's determination of Elam's mental RFC is supported by substantial

evidence.  Even in cases in which the record contains conflicting evidence, such

conflicts are for the Commissioner, not the courts, to resolve.[94]    The Commissioner's

holding must be affirmed, and summary judgment is granted for Defendant on Elam's

claim that the ALJ's findings regarding Elam's physical and mental RFC are not

supported by substantial evidence.

---

[90]     R. 23.

[91]     R. 29.

[92]     R. 26-28.

[93]     R. 29.

[94]     *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

V.      **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 12] is

**DENIED**.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 14] is

**GRANTED**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this 31st day of **October, 2012**.

Nancy F. Atlas
United States District Judge